IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

STORMONT-VAIL HEALTH
CARE, INC.,

        Plaintiff,
vs.                           **Case No. 10-4052-RDR**

U.S. DEPT. OF LABOR
EMPLOYEE BENEFITS SECURITY
ADMINISTRATION; MARK
UNDERWOOD,
        Defendants.

## MEMORANDUM AND ORDER

On May 4, 2010, plaintiff Stormont Vail Health Care, Inc. was issued a "determination letter" from defendant Department of Labor. The determination letter involved the application of Jennifer Reavis for expedited review of the denial of COBRA premium reduction under the American Recovery and Reinvestment Act of 2009 (ARRA). The letter stated as follows:

> [T]he Department of Labor has determined that the applicant [Ms. Reavis] is **ELIGIBLE** for the ARRA COBRA premium reduction. <u>Please review the information and provide the applicant with the ARRA COBRA premium reduction and provide our office with documentation demonstrating that you have provided the applicant with the benefit</u>. **We request that you provide this documentation no later than 10 business days from the date of this letter.**
> Failure to comply with obligations under COBRA or the premium reduction requirements may subject a plan sponsor to excise taxes and, in the case of a failure to provide required notices, to a daily civil penalty. In addition both the assistance eligible individual and the Secretary of Labor may bring a civil action for injunctive relief. *Additionally, ARRA provides that the Secretary may assess a penalty against a plan sponsor or health insurance*

> *issuer of not more than $110 per day for each failure to comply with the Secretary's determination after 10 days of the plan sponsor's or issuer's receipt of the determination.* If you believe that this determination is incorrect, you may wish to seek legal advice regarding obtaining judicial review of this determination under section 702 of the Administrative Procedure Act, 5 U.S.C. 702.

On the same date, the Department of Labor issued a determination letter to Jennifer Reavis with a copy to plaintiff. The letter stated that: Reavis had made an application for expedited review of a denial of the COBRA premium assistance under ARRA; that to be eligible for premium assistance a person must have a continuation coverage election opportunity related to an involuntary termination of employment (though not for gross misconduct); and that the Department had determined that Reavis was eligible for COBRA premium assistance. The letter further explained that although plaintiff indicated that Reavis "was dismissed for gross misconduct, the Department finds that the information provided does not support a disqualification from COBRA continuation coverage on grounds of gross misconduct."

The parties construe these determination letters as requiring plaintiff to cover Reavis, an employee terminated by plaintiff in February 2010, under the provisions of plaintiff's self-funded health insurance plan or risk penalties from the government. This case is before the court upon plaintiff's motion for injunctive relief staying the final determination letter issued by defendant. Doc. No. 3. Consistent with the pleadings, the docketing statement

and statements of counsel, the court construes this motion as one for a temporary restraining order (TRO) pursuant to FED.R.CIV.P. 65. The court conducted a hearing upon the motion on May 26, 2010 and is prepared to rule. Obviously, this ruling is based upon a preliminary view of the case, and the findings in this order do not bind the court in later proceedings.

Factual background

Jennifer Reavis was employed by plaintiff as a nurse in February 2010. Plaintiff received a report that Reavis, while working in a patient care area, "mooned" a male nurse. The male nurse has stated that Reavis told him to answer some patient call lights, that he assertively told her "no, I'm busy," and that in response Reavis bent over with her scrub pants pulled down, exposing her rear end. For the purposes of this order the court shall assume these facts are true.[1]

Plaintiff fired Reavis on February 22, 2010, explaining on the personnel action worksheet that Reavis had failed "to meet SVHC values." Plaintiff further decided that the mooning incident constituted "gross misconduct." Plaintiff informed Reavis on March 4, 2010 that she would not qualify for continued health insurance coverage under the provisions of the COBRA and ERISA statutes. The

---

[1] Reavis has claimed that she was responding to a provocative finger gesture and that she only partially exposed her backside to the male nurse. We have not considered these allegations in this ruling.

3

notice indicated that "gross misconduct" was "an extreme or willful act."

Reavis filed an "Application to the U.S. Department of Labor for Expedited Review of Denial of COBRA Premium Reduction." The application form asks whether Reavis was denied COBRA coverage. The application form also asks for information about the reasons given for the denial of COBRA continuation coverage and/or premium reduction.

The Department of Labor received Reavis' application. The Department sent plaintiff written notice indicating that Reavis had filed her application for expedited review and that the law required a determination within 15 business days. Plaintiff was directed to supply information regarding the circumstances of plaintiff's termination and eligibility for COBRA continuation coverage within two business days. A Department representative spoke to Reavis over the phone regarding the "mooning" incident. Plaintiff's representative sent two witness statements to the Department – one from the male nurse and one from another nurse who was present at the time of the "mooning" incident. Plaintiff's representatives also spoke to Department officers working on plaintiff's application. The administrative record indicates that a benefits advisor for the Department of Labor told plaintiff's representative that "gross misconduct" generally must be something that would rise to the level of a felony or something that might

lead to criminal charges. Subsequent to these contacts, a recommendation was made that the Department find that there was no "gross misconduct." This recommendation was reviewed and adopted by the Department.

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1161-1166 and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), an employee covered by his employer's group health plan may, after termination of employment, continue to have insurance coverage for a limited time under the plan unless the employee is terminated for "gross misconduct." 29 U.S.C. § 1163. The continued coverage is paid for by the employee. The COBRA Act was amended recently by the American Recovery and Reinvestment Act ("ARRA", also known as the "Stimulus Act"), Pub.L. No. 111-5, 123 Stat. 115 (2009). Under the amendments, the jobless beneficiary may receive a subsidy to help pay the health insurance premium for continued insurance under COBRA. The employer is responsible for the former employee's premium assistance and, in return, the employer is reimbursed with a tax credit.

ARRA also provides that a person who is denied the benefits of a reduced COBRA payment may appeal via a streamlined, expedited process of review by the Secretary of Labor. The law states in part:

> EXPEDITED REVIEW OF DENIALS OF PREMIUM ASSISTANCE - In any case in which an individual requests treatment as an

> assistance eligible individual and is denied such
> treatment by the group health plan, the Secretary of
> Labor (or the Secretary of Health and Human Services in
> connection with COBRA continuation coverage which is
> provided other than pursuant to part 6 of subtitle B of
> title I of the Employee Retirement Income Security Act of
> 1974), in consultation with the Secretary of the
> Treasury, shall provide for expedited review of such
> denial. An individual shall be entitled to such review
> upon application to such Secretary in such form and
> manner as shall be provided by such Secretary. Such
> Secretary shall make a determination regarding such
> individual's eligibility within 15 business days after
> receipt of such individual's application for review under
> this paragraph. Either Secretary's determination upon
> review of the denial shall be de novo and shall be the
> final determination of such Secretary. A reviewing court
> shall grant deference to such Secretary's determination.
> The provisions of this paragraph, paragraphs (1) through
> (4), and paragraph (7) shall be treated as provisions of
> title I of the Employee Retirement Income Security Act of
> 1974 for purposes of part 5 of subtitle B of such title.

ARRA § 3001(a)(5), 123 Stat. at 458.

Reavis has health conditions which made it impossible for her to obtain health insurance following her termination. However, she has been hired by a new employer and will be covered by that employer's group health insurance plan starting July 23, 2010. Since her termination, Reavis has incurred over $1,000 in medical costs. Her health conditions require regular medical treatment and she recently had to visit the emergency room.

<u>Standards for a TRO</u>

In order to obtain a temporary restraining order, plaintiff must show: (1) a likelihood of success on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities

6

tips in plaintiff's favor; and (4) that the injunction is in the public interest. See Chamber of Commerce of U.S. v. Edmondson, 594 F.3d 742, 764 (10th Cir. 2010); Wilderness Workshop v. U.S. Bureau of Land Management, 531 F.3d 1220, 1224 (10th Cir. 2008) (listing the elements somewhat differently).

Likelihood of success

Plaintiff claims that the determination letter is substantively in error because the "mooning" incident constituted "gross misconduct." Plaintiff also claims that the determination letter should be stayed because plaintiff was denied due process guaranteed by the Constitution.

**Gross misconduct**. The court believes that it must show deference to the defendant's finding of no gross misconduct. As noted above, Congress has dictated in ARRA that this court give "deference" to the determination of the Secretary of Labor. The Administrative Procedure Act (APA) also directs courts to show deference to final agency decisions. The APA permits an agency action to be set aside if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This is a deferential standard in which the court's review is narrow and an agency's action is upheld if the agency has articulated a rational basis for the decision and has considered the relevant factors. Copart, Inc. v. Administrative Review Board, Department of Labor, 495 F.3d 1197, 1202 (10th Cir. 2007). This

7

standard has been applied to a review of the Department of Labor decision in a COBRA coverage case. Hejazi v. U.S. Dept. Of Labor, 2009 WL 3485958 (W.D.Wash. 10/29/2009).

The parties and the court are aware that there is no definitive guidance in the statutes, regulations or court cases as to the meaning of "gross misconduct." The court has examined many cases and a law review article on the topic.[2] The court will not lengthen this opinion with a review of the various holdings. The "mooning" incident was intentional, willful and reckless in the eyes of the court. But, it was also a single, isolated, impulsive incident which only harmed workplace protocol. The court does not believe it is likely that the plaintiff can prove that defendant's determination was arbitrary, capricious or an abuse of discretion.

**Due Process.** Plaintiff contends that the procedure which led to the determination letter is not authorized by the statute which sets forth the expedited review process and is contrary to the Constitution's Due Process Clause.

With regard to statutory authorization, the ARRA language quoted earlier in this opinion states that the expedited review procedures apply to "any case in which an individual requests

---

[2] E.g., Moore v. Williams College, ___F.Supp.2d ___, 2010 WL 1375401 (D.Mass. 2010) (and cases cited therein); Bourdeaux v. Rice Palace, 491 F.Supp.2d 625, 633-34 (W.D.La. 2007); Erin-Ann Jerrens-Sudkamp, *COBRA's Gross Misconduct Exception: Strategies for Compliance in the Face of Uncertainty*, 24 LABOR LAWYER 399 (Winter/Spring 2009).

8

treatment as an assistance eligible individual and is denied such treatment by the group health plan." Although the heading to this provision is labeled "EXPEDITED REVIEW OF DENIALS OF PREMIUM ASSISTANCE," the court believes there is a solid argument that Congress intended the expedited review process to apply to this fact situation.[3] One of the purposes of ARRA in general was to swiftly ameliorate some of the nation's unemployment problems, one of which is the loss of health insurance. See Thomas W. Meagher & Glen C. Nebel, *The New COBRA Premium Subsidy,* 25 No. 3 JOURNAL OF COMPENSATION & BENEFITS 4 (May/June 2009) (Congress has provided a modified safety net that will require employers to extend and subsidize continuation coverage under COBRA). It seems to make little sense to expedite the decision on whether premium assistance is available, but then wait for a more extended process to determine whether an applicant is eligible for COBRA coverage at all. On this record, it appears unlikely that plaintiff will prove that the expedited review procedures were not statutorily authorized to cover this situation.

With regard to the adequacy of the administrative procedure, in general, constitutional due process requires that a party affected by government action be given "the opportunity to be heard

---

[3] Section and subsection titles may not be construed to alter the plain meaning of a statute. <u>Minnesota Transportation Regulation Board v. United States</u>, 966 F.2d 335, 339 (8th Cir. 1992).

at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotation marks and citations omitted). Courts may consider such factors as: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews, 424 U.S. at 335. The government must provide a litigant with "a fair opportunity to mount a meaningful defense. . . . [The Due Process Clause's] interest is only in whether an adjudicative procedure as a whole is sufficiently fair and reliable that the law should enforce its result." Energy West Mining Co. v. Oliver, 555 F.3d 1211, 1219 (10th Cir. 2009).

In this matter, plaintiff operates a self-funded health insurance plan which covers more than 4,000 persons. Plaintiff would be reimbursed through a tax credit for any premiums it had to pay for Reavis' continued COBRA coverage. The period of continued coverage generally may not exceed eighteen months and expires when other insurance is obtained. Plaintiff had notice of what the issues were. Plaintiff had the opportunity to address the factfinder and provide witness statements before a decision was

10

made.  This was an uncomplicated situation, and one could argue that the time and cost involved in a more protracted review process would not be justified given the thousands of applications which defense counsel has stated are pending.  While plaintiff claims that it had little or no notice of the procedures employed and the reasons for the Department's decision, plaintiff had contact with and could ask questions of the Department, and the decision in this rather straightforward matter is not mysterious.  It was a judgment as to whether the "mooning" incident constituted "gross misconduct."  Moreover, plaintiff has not indicated that additional procedures would likely have resulted in a different outcome.  While plaintiff suggests that it could have better addressed the factual context of the mooning incident had it been given notice of Reavis' version of the facts, it is not at all clear whether it would have made a difference.  The absence of clear prejudice to plaintiff diminishes the possible success of plaintiff's due process claim.  See <u>Energy West Mining</u>, 555 F.3d at 1219 (discussing a prejudice requirement for non-core due process challenges in a case involving destroyed evidence).

Plaintiff also contends that the Department of Labor applied the wrong standard for "gross misconduct."  This is not a due process flaw, in our opinion.  Judges may make mistakes regarding the law without depriving the litigants of due process.  Furthermore, the record is not clear that the wrong standard was

11

applied.

### Irreparable harm

Plaintiff must demonstrate that there is a "significant risk" that it will experience harm that cannot be compensated after the fact by monetary damages. RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009). Purely speculative harm is insufficient. Id. Plaintiff argues that without injunctive relief it will be forced to provide Reavis with health insurance benefits.[4] This appears to be a significant risk. There is no argument that plaintiff will be able to recover those benefits through compensatory damages or some other mechanism if plaintiff is ultimately successful at trial. Therefore, the court finds that plaintiff has proven a risk of irreparable harm to plaintiff and the beneficiaries of plaintiff's health insurance plan.

### Balance of equities

If this court issues the requested injunction, then Reavis will not have medical insurance and will be responsible for paying her medical costs. She is far less capable of paying those expenses than plaintiff's medical plan. Plaintiff argues that Reavis will have an avenue to recoup her medical costs if she can prove that COBRA coverage was improperly withheld. This apparently

---

[4] Plaintiff also argues that the determination letter will force it to breach its fiduciary duty to enforce the terms of the health plan. Here plaintiff seems to be predicting that it could be subject to a lawsuit for improperly granting coverage. We reject this aspect of plaintiff's argument as speculative.

would require Reavis to file a lawsuit which will require time and expense. Meanwhile, Reavis has no insurance coverage for the next time she must visit a medical provider. The balance of equities in this case weighs against plaintiff.

Public interest

The public interest argued by plaintiff relates to the ultimate issues in this case, i.e., whether the administrative procedures were fair and the determination letter comported with the law. Plaintiff contends that the public has a strong interest in seeing that the law is followed and that the Due Process Clause is not violated. The issue at this stage, however, is whether an injunction serves the public interest. The public's interest in enforcing the law and due process will be protected as these proceedings go forward. In the meantime, the public's interest in increasing health insurance coverage in this nation is not served by plaintiff's requested injunction. Certainly Congress (through COBRA, ARRA and other legislation) has evinced a public goal of increasing, not diminishing, the number of persons covered by health insurance.

Conclusion

In conclusion, plaintiff has not shown a likelihood of success on the merits, or that the balance of equities or the public interest favor the issuance of a TRO. Plaintiff has shown a risk of rather modest irreparable harm. Upon these findings, the court

13

shall deny plaintiff's motion for a TRO.

**IT IS SO ORDERED.**

Dated this 27th day of May, 2010 at Topeka, Kansas.

                                        s/Richard D. Rogers
                                        United States District Judge